Question Submitted by: Paul Ziriax, Secretary, State Election Board
2014 OK AG 10
Decided: 09/25/2014
Oklahoma Attorney General Opinions

Cite as: 2014 OK AG 10, __ __

 
Â¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
Does Allpoint Pen technology satisfy Oklahoma's legal requirements for a valid signature in a voter registration application?
Â¶1 You state that Voter Participation Center, a voter registration project, has submitted to county election boards numerous voter registration applications using National Voter Registration Act forms, some of which have been signed using Allpoint Pen technology.[1] You also explain that, in effect, Allpoint Pen technology involves an individual making the motions of a signature on an electronic device, and those motions are then transmitted to a machine with an actual pen that imitates those motions with wet ink on a printed copy of an otherwise completed voter registration form.[2] Your question relates to whether the use of this technology satisfies the requirements for a valid signature on a voter registration application under Oklahoma law. You note that Voter Participation Center maintains that Allpoint Pen technology satisfies Oklahoma law because it is a "traditional, pen-on-paper, 'wet' signature."[3] We conclude that the technology does not satisfy the law, disagreeing with Voter Participation Center for the reasons below.
I.
The Allpoint Pen Technology, as Described, Does not Satisfy the Requirements of 26 O.S.2011, Â§ 4-112(A), a Statute Which Governs the Requirements for Oklahoma's Voter Registration Applications.
Â¶2 Oklahoma's Election Code authorizes the Secretary of the State Election Board to develop voter registration applications; the Election Code also requires that the Secretary's application include several pieces of information, including an applicant's name, date of birth, and place of residence. 26 O.S.2011, Â§ 4-112(A). The Election Code also provides the following:



A voter registration application shall be signed by the applicant in writing. The applicant shall personally subscribe his or her name to or make his or her mark on the application, and no agent, representative or employee of the applicant may sign or mark on the applicant's behalf. The signature or mark must be the original, handwritten signature, autograph or mark of the applicant. No facsimile, reproduction, typewritten or other substitute signature, autograph or mark will be valid.



Id. The statute thus requires that a valid voter application include a signature that is "original," "handwritten," and made "personally" with no "facsimile, reproduction, [ ] or other substitute signature." Id. The Allpoint Pen technology, as described, simply cannot meet these requirements. The technology requires that signature motions on an electronic device be recorded and transmitted to a machine that reproduces the signature on a printed voter application. The resulting signature could not be said to have been made "personally" by the applicant because the signature is made by a machine after having signature motions transmitted to it. What the applicant did personally--make signature motions on an electronic device--does not satisfy the statute's requirements. Nor could the signature be "handwritten": the actual signature apparent on the form was produced by a mechanical pen reproducing movements transmitted to it.
Â¶3 Further, it would be unreasonable to suggest that the resulting signature would be anything other than a "facsimile" or "reproduction" rather than an "original signature." A facsimile signature is one "produced by mechanical means but recognized as valid by law for many banking, financial, and business transactions." Webster's Third New International Dictionary 813 (3d ed. 1993). On the other hand, something that is original "constitut[es] the product or model from which copies are made." Id. at 1592. It is clear the Allpoint Pen technology, as described, requires that "original" motions be made on an electronic device that are then reproduced by a mechanical pen in another location. Allpoint Pen technology thus does not satisfy the requirements of the statute.
II.
The Allpoint Pen Technology, as Described, Does not Satisfy the Requirements of OAC 230:15-5-84, an Administrative Rule That Provides the Requirements for Voter Applications Under the National Voter Registration Act.
Â¶4 As noted above, the Voter Participation Center uses National Voter Registration forms developed by the federal government's Election Assistance Commission, not state voter applications. Under the National Voter Registration Act and its amendments, the Election Assistance Commission develops federal forms while states must develop procedures to accept them. The statutory provision discussed in the prior section, 26 O.S.2011, Â§ 4-112(A), would thus not necessarily delineate the signature requirements for federal forms. However, in that same statutory provision providing the requirements for a state voter application, the Legislature has required that the Secretary must "prescribe procedures to accept and use federal registration applications as required by the National Voter Registration Act of 1993." 26 O.S.2011, Â§ 4-112(A). It is to these regulations that we now turn.
Â¶5 The State Election Board currently has only one set of requirements in the Oklahoma Administrative Code that governs acceptance of both the national and state voter registration forms. See OAC 230:15-5-84. In 1993, Congress passed the National Voter Registration Act, which imposed various requirements on the states to, among other things, accept federally-developed voter registration applications. See generally Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at 52 U.S.C. Â§Â§ 20501 - 20511). In response, the Oklahoma Legislature sought to implement the Act's requirements; one part of that implementation involved a requirement that the Secretary of the Election Board promulgate rules regarding the acceptance of state and federal voter applications. See 1994 Okla. Sess. Laws ch. 260, Â§ 13 (codified as amended at 26 O.S.2011, Â§ 4-112). In response to these mandates the Secretary did promulgate rules, including the one at issue here. See 12 Okla. Reg. 2197, 2207-08 (1995). 
Â¶6 That one regulation simply requires the "[a]pplicant's original signature or [ ] original mark." OAC 230:15-5-84(b)(8). However, in light of the statutory standard discussed above, Allpoint Pen technology does not satisfy this requirement on federal forms. The "original signature" or "original mark" language in the administrative rule imposes the same obligation as the statutory provision discussed earlier, 26 O.S.2011, Â§ 4-112(A), for two key reasons. First, the regulation covers acceptance of both state and national voter registration forms and includes many of the elements listed in the statute for state forms. The most reasonable reading of the regulation would be that it mirrors the signature requirement of the statute, not that it imposes a different, independent standard that conflicts with the state requirement and because of that only actually applies to the national form.
Â¶7 Second, as mentioned above, an "original" signature stands in contrast to a "facsimile" or "reproduction" signature. The text in 26 O.S.2011, Â§ 4-112(A) that a signature must be "original" and that "[n]o facsimile, reproduction, typewritten or other substitute signature . . . will be valid" are not impositions of two different requirements but an expression of one requirement. Hence, by stating in OAC 230:15-5-84 that only an "original" signature or mark is required, the rule necessarily rules out facsimile and reproduction signatures.
Â¶8 The standard governing valid signatures in voter applications is thus substantially the same whether the signature requirement for all applications in OAC 230:15-5-84 or the requirement for state applications in 26 O.S.2011, Â§ 4-112(A) governs. Because the Allpoint Pen technology as described involves an applicant making signature motions on an electronic device that are then transmitted to a machine that reproduces that signature, the result is not an "original" signature and does not satisfy the Oklahoma Administrative Code.
III.
Conclusion
Â¶9 Both the Oklahoma Voter Registration Application[4] and the National Voter Registration Act form[5] require that the applicant swear or affirm that several statements are correct, including that the information provided on the form is true. The federal form's signature area includes a statement that the person signing knows they do so under the penalty of perjury, and the state form spells out even more clearly that the penalties for providing false information may include a prison sentence, a sizeable fine, or both. Requiring an original signature in the manner required by Oklahoma law for both forms thus ensures that applicants understand the seriousness of signing a voter registration application, a reasonable interest for a state to advance. Allpoint Pen technology might provide a slightly more convenient way for a citizen to register to vote, but the current state of Oklahoma law does not protect convenience only; it purposefully imposes the minor inconvenience of personally signing a form in order to communicate the legal ramifications of the application.



Â¶10 It is, therefore, the official Opinion of the Attorney General that:
1. Under 26 O.S.2011, Â§ 4-112(A), an Oklahoma Voter Registration Application must include an "original signature, autograph or mark" that is not a "facsimile, reproduction, typewritten or other substitute signature, autograph or mark." Id.
2. Under OAC 230:15-5-84, a National Voter Registration Act application must include an "original signature" or "original mark," which precludes any signature or mark that would be a facsimile, reproduction, or substitute.
3. The Allpoint Pen technology, as described, requires signature motions be recorded on an electronic device and transmitted to a machine that reproduces a signature, does not satisfy the requirements for Oklahoma Voter Registration Applications or National Voter Registration Act applications under 26 O.S.2011, Â§ 4-112(A) and OAC 230:15-5-84, because the resulting signatures are not original signatures.



E. SCOTT PRUITT
Attorney General of Oklahoma
JARED HAINES
Assistant Solicitor General 
FOOTNOTES
[1] See Letter from Paul Ziriax, Secretary of the State Election Board, to E. Scott Pruitt, Oklahoma Attorney General (Aug. 4, 2014) (on file with author). 
[2] Id. 
[3] Id. 
[4] Available at http://ok.gov/elections/documents/vrform.pdf. 
[5] Available at http://www.eac.gov/assets/1/Documents/Federal%20Voter%20Registration_6-25-14_ENG.pdf.




 CitationizerÂ© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Title 26. Elections

Â 
Cite
Name
Level



Â 
26 O.S. 4-112, 
Registration Forms
Discussed at Length